UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:15-CV-00140 HBB

JENNIFER R. MANNS            PLAINTIFF

VS.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security            DEFENDANT

## MEMORANDUM, OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Jennifer R. Manns ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 15) and Defendant (DN 20) have filed a Fact and Law Summary.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 13). By Order entered January 15, 2016 (DN 14), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

Plaintiff protectively filed an application for Disability Benefits and Supplemental Security Income Benefits on April 13, 2013 (Tr. 10, 234-35, 227-33).[1] Plaintiff alleged that she became disabled on September 3, 2008 as a result of degenerative disc disease, lumbar radiculopathy, hypersomnia, chronic tendonitis in shoulder, hypokalemia, anxiety, GERD, chronic migraines, and several other issues (Tr. 245). Administrative Law Judge Susan Torres ("ALJ") conducted a video hearing on August 25, 2014. The ALJ was in Baltimore, Maryland, and the Plaintiff was present in Bowling Green, Kentucky, and represented by Debra L. Broz. Also present and testifying was Stephen P. Davis, an impartial vocational expert.

In a decision dated February 13, 2013, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 11-12). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since September 3, 2008, the alleged onset date (Tr. 12). At the second step, the ALJ determined that Plaintiff's cervical disc disease, lumbar disc disease, migraines, obstructive sleep apnea, anxiety disorder, depression, postural tachycardia syndrome (POTS), carpal tunnel syndrome, and tendonitis shoulder are "severe" impairments within the meaning of the regulations (Id.). Also at the second step, the ALJ determined that Plaintiff's extreme obesity is a "non-severe" impairment within the meaning of the regulations (Tr. 13), though the ALJ did consider Plaintiff's obesity in determining her residual functional capacity in accordance with SSR 02-1p. At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Id.).

---

[1] While the benefits applications reflect different dates of application, the undersigned will use the date of protective filing for purposes of clarity.

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform light work, except Plaintiff can only occasionally climb ladders, ropes, or scaffolds; requires a sit/stand option at will; can only occasionally push or pull with her left upper extremity; can only occasionally reach overhead with the left upper extremity; must avoid concentrated exposure to vibration as well as hazards such as heights and moving machinery; and can understand, remember, and carry out simple instructions (Tr. 15). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform any of her past relevant work as an Electrocardiographic technician and a billing clerk (Tr. 23).

The ALJ proceeded to the fifth step where she considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 15-16). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 23-24). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from September 3, 2008 through the date of the decision (Tr. 24).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 6). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1).

## CONCLUSIONS OF LAW

### Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.

Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a),

416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied the Plaintiff's claim at the fifth step, determining that, while the Plaintiff is unable to perform her past relevant work, there still exist a substantial number of jobs in the national economy that Plaintiff could perform despite her limitations (Tr. 23). The ALJ relied on the testimony of a vocational expert. The expert based his assessment on the Plaintiff's residual functional capacity as compared with jobs defined in the Dictionary of Occupational Titles (Tr. 24, 47-48). These jobs include that of a parking lot cashier (Tr. 24, 48), a self-service cashier (Tr. 24, 49), and a lamination inspector (Tr. 24, 49). The vocational expert further testified that, even with her limitations, the Plaintiff could perform roughly eighty percent of the unskilled, light duty jobs in the economy (Tr. 48).

A

The Plaintiff first challenges the ALJ's decision at Finding No. 5, the assessment of Plaintiff's residual functional capacity (DN 15 at p. 2). The Plaintiff argues that the ALJ erred in giving little weight to Plaintiff's treating physician, Dr. James Jarvis (Id. at p. 3). Dr. Jarvis offered the opinion that Plaintiff can lift less that ten pounds frequently or occasionally, stand or walk with normal breaks for less than two hours in an eight hour workday, can sit with normal breaks for less than six hours in an eight hour workday, can never climb stairs, ramps, ladders, ropes, or scaffolds, can never balance or stoop, and can only occasionally crouch, kneel, or crawl (Tr. 537-38). Dr. Jarvis also cited limitations of Plaintiff's ability to push or pull with her extremities, and advised numerous environmental limitations as well (Tr. 537, 539-40). In support of his conclusions, Dr. Jarvis states that he considered MRIs of Plaintiff's cervical and lumbar spine as well as treatment by neurologist Dr. Zia (Tr. 537).

In response, the United States argues that Dr. Jarvis's opinion is not sufficiently supported by evidence in the medical record (DN 20 at p. 6-7). The United States notes that the ALJ discussed the Plaintiff's medical record, and found several inconsistencies with Dr. Jarvis's opinion (DN 20 at p. 7). Based on these inconsistencies, the United States argues that the ALJ's decision is reasonable and based on substantial evidence (Id.).

Here, neither party disputes Dr. Jarvis's status as a treating physician. Thus, the issue becomes whether the ALJ should have afforded his testimony controlling weight. In general, an Administrative Law Judge must give a medical source controlling weight if two conditions are satisfied. First, the opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and second, the opinion must not be inconsistent with other substantial evidence in the case record. 20 C.F.R. §§ 404.1527(c)(2) 416.927(c)(2). The

Commissioner must provide good reasons for discounting the weight given a treating source. Gayheart v. Comm'r of Soc. Sec, 710 F.3d 365, 375 (6th Cir. 2013). "This procedural requirement insures 'that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" Id. at 376.

If the ALJ decides not to afford the treating source controlling weight, she then applies factors from the regulations to determine the appropriate amount of weight to give the opinion. These factors include the length, nature, and extent of the treatment relationship, the supportability and consistency of the opinion when compared with other evidence in the record, and the treating source's area of specialty. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(5), 416.927(c)(2)(i)-(ii), (c)(3)-(5); Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004).

In the instant case, the ALJ decided not to give Dr. Jarvis's opinion controlling weight (Tr. 21). In support of this decision, the ALJ first noted that the Plaintiff underwent a laminectomy in October, 2008 in response to an MRI conducted on September 5, 2008 that revealed a dramatic herniation at L5-S1 (Tr. 16-17, 357, 745-46). However, a subsequent MRI taken in May of 2013, while displaying some progressive disc degeneration changes in the lower lumbar region, also reflects that "[t]he disk bulges seen on 09/05/2008 have decreased in size with tiny central L4-5 and small right paracentral L5-S1 disk protrusion components now present. No focal disk herniation, acute traumatic injury, or spondylolisthesis is noted." (Tr. 18, 622-23).

The ALJ further noted that Dr. Zia's treatment notes from 2010 through 2013, upon which Dr. Jarvis reports to have relied, state that the Plaintiff exhibited a normal gait throughout treatment as well as intact fine finger movement and "other objective medical signs that the

claimant did not experience significant physical functional limitations due to her pain symptoms." (Tr. 19-19 citing Tr. 545, 548, 551, 588, 591, 594, 597, 600).  Finally, the ALJ gave the greatest weight to Dr. Koerber's consultative examination (Tr. 21-22).  Dr. Koerber noted that the Plaintiff got on and off the examination table without difficulty, exhibited 5/5 strength in her arms and legs, tested negative for Tenil's and Phalen's signs bilaterally, and could knee squat and heel, toe, and tandem walk without difficulty (Tr. 360).  Dr. Koerber did note that Plaintiff exhibited decreased lumbar spine flexion, but she did not exhibit any other limitations in her upper or lower extremities (Tr. 360, 363-64).

The Plaintiff further argues that the ALJ erred in affording greater weight to state agency physicians Dr.s. Sadler, Saranga, and Koerber because they made their findings without reviewing evidence that Plaintiff introduced into the record after they offered their opinions (DN 16 at 5-7).  However, this argument must fail for two reasons.  First, the Plaintiff has failed to demonstrate how the subsequent evidence would render the state physicians opinions unreliable.  The Sixth Circuit Court of Appeals has suggested that one should reasonably expect there to be holes in the records that state agency physicians review.  Kelly v. Comm'r of Soc. Sec., 314 F. App'x 827, 831 (6th Cir. 2009) (noting that there will always be a gap in the record between when the agency experts issue their opinions and when the ALJ issues a decision).

Second, while Dr.s. Sadler, Saranga, and Koerber did not review the subsequent MRIs and CT scan before issuing their opinion, the ALJ had access to these records and, in fact, cited to them as reasons why she afforded Dr. Jarvis's opinion less weight (Tr. 18, 20).  It is ultimately the responsibility of the ALJ to review the entire record and make findings of fact and conclusions of law.  20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)  The undersigned finds that the ALJ did not err in affording weight to the state agency physicians.

Thus, the ALJ's explanation outlines the numerous instances of evidence inconsistent with Dr. Jarvis's conclusions, including Dr. Zia's treatments upon which Dr. Jarvis claimed to have relied. This, coupled with Dr. Zia's three-year treatment of the Plaintiff, the presence of inconsistent MRIs, and Dr. Koerber's consultative examination combine to satisfy both the two-part test outlined above and the factors set forth in the regulations. The undersigned therefore finds substantial evidence for the ALJ's decision not to afford Dr. Jarvis controlling weight.

B

Next, the Plaintiff argues that the ALJ erred in her considerations of Plaintiff's subjective allegations of pain (DN 16 at p. 7). When determining whether a claimant suffers from pain or other symptoms, the Administrative Law Judge applies a two-part test. The test first requires an examination of whether there is objective medical evidence of an underlying condition. If so, the next step is to ask "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." Duncan v. Sec'y of Health & Human Servs., 801 F.22d 847, 853 (6th Cir. 1986). When, as in this case, the reported pain and/or other symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the Administrative Law Judge will consider other information and factors which may be relevant to the degree of pain alleged. 20 C.F.R. § 404.1529(c)(3).

Here, the record reflects that the ALJ considered both the record as a whole as well as the factors promulgated in the regulations. For instance, the Plaintiff argues that the ALJ failed to provide an adequate explanation for why she did not find credible Plaintiff's allegations of pain

associated with carpal tunnel syndrome (DN 16 at p. 7). On the contrary, the ALJ discusses Dr. Zia's finding of carpal tunnel syndrome, pointing out that, despite the diagnosis, Dr. Zia's note also indicates that the Plaintiff's fine motor skills were intact, and her motor strength was symmetric (Tr. 21). This analysis demonstrates a consideration of the objective medical record as well as a consideration of other factors concerning the Plaintiff's "functional limitations and restrictions due to pain or other symptoms." *See* 20 C.F.R. § 404.1529(c)(3)(vii).

Tolerance of pain is a highly subjective and individualized matter. The ALJ, who had both the medical record and the Plaintiff's testimony before her, must necessarily make a determination of credibility, and this determination "should not be discharged lightly." Houston v. Sec'y of Health & Human Servs., 736 F.2d 365, 367 (6th Cir. 1984) (citing Beavers v. Sec'y of Health, Educ. & Welfare, 577 F.2d 383 (6th Cir. 1978)). The undersigned finds that the ALJ's conclusion in this instance is supported by substantial evidence and fully comports with applicable law.

C

The Plaintiff next challenges the weight the ALJ afforded third party evidence, specifically the testimony of the Plaintiff's husband (DN 16 at 6-7). The Plaintiff offers no reason why the ALJ should have afforded this testimony more weight other than that the testimony is consistent with that of the Plaintiff (Id.). However, the Plaintiff has not provided, nor has the undersigned located, any case law holding that third party testimony is entitled to special deference from the ALJ simply because it is consistent with that of the claimant. Rather, the ALJ properly noted that the Plaintiff's husband is, first, not a proper medical source as defined in 20 C.F.R §§ 404.1527(a)(2), 416.927(a)(2), and, second, cannot fairly be described as an unbiased witness (Tr. 21).

The ALJ considered the Plaintiff's husband's testimony, and decided to afford it little weight. This decision is supported by substantial and complies with all applicable laws.

D

Finally, the Plaintiff challenges the ALJ's decision at Finding No. 10 (DN 16 at pp. 8-9). The Plaintiffs asserts that, because the ALJ did not pose a hypothetical to the vocational expert that included Dr. Jarvis's proposed limitations, and because the ALJ failed to define "light work" when posing her hypothetical question to the vocational expert, the hypothetical question was irreparably flawed, thus warranting remand (DN 16 at p. 9).

At the fifth step of the sequential evaluation process promulgated by the Commissioner, the ALJ has the burden of demonstrating that a substantial number of jobs exist in the national economy which the claimant could perform given the claimant's age, experience, education, and residual functional capacity. Varley v. Sec'y of Health and Human Servs., 820 F.2d 777, 779 (6th Cir. 1987). The ALJ may rely on the responses of a vocational expert to hypothetical questions in making this determination. Id. The hypothetical question must be an accurate portrayal of the claimant's condition. Id.

Here, the Plaintiff's argument is flawed. She asserts that Dr. Jarvis's opinion of the Plaintiff's limitations should have been substituted for the ALJ's own assessment (DN 16 at p. 9). However, the Sixth Circuit Court of Appeals has suggested that the question of the hypothetical's accuracy is not whether it reflects the Plaintiff's idea of her own limitations, but rather whether the hypothetical accurately portrays the ALJ's determination of the Plaintiff's residual functional capacity. *See* Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 237 (6th Cir. 2002) (citations omitted). True, if the residual functional capacity is itself not supported by

substantial evidence, then the hypotheticals will necessarily be flawed as well. However, as previously noted, the undersigned finds the ALJ's residual functional capacity determination in this case to be supported by substantial evidence. Thus, as the hypothetical questions did not omit any crucial aspect of the Plaintiff's residual functional capacity, the ALJ's questioning of the vocational expert was proper.

The Plaintiff also argues that the ALJ's failure to define "light work" when questioning the vocational expert constitutes reversible error. However, the Plaintiff has offered no argument that this omission resulted in any misunderstanding on the part of the vocational expert. On the contrary, the vocational expert in this case is highly qualified and possesses over forty years experience (Tr. 50, 217-18). Thus, to any extent that the ALJ's failure to define light work was a procedural error, the undersigned finds that the error was harmless. <u>Heston v. Comm'r of Soc. Sec.</u>, 245 F.3d 528, 535-536 (6th Cir. 2001)

## ORDER

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence, and it is ordered that judgment be granted for the Commissioner.

*H. Brent Brennenstuhl*
**H. Brent Brennenstuhl**
**United States Magistrate Judge**

August 25, 2016

Copies: Counsel